## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO. 12-194 |
| v. | * | SECTION: "F"(5) |
| KELLEY WILLIAMS | * | VIOLATIONS:  18 U.S.C. § 513(a) |

\*     \*     \*

## FACTUAL BASIS

If this case had gone to trial, the Government would have proven the following beyond a reasonable doubt through competent evidence and tangible exhibits:

Representatives from Whitney Bank would testify that the bank is a financial institution located in the Eastern District of Louisiana, engages in interstate commerce, and that the deposits were insured by the Federal Deposit Insurance Corporation.

Representatives from both Capital One and J.P. Morgan Chase Bank would testify that both financial institutions do business within the Eastern District of Louisiana, engage in interstate commerce, and that the deposits were insured by the Federal Deposit Insurance Corporation.

Witnesses and records would prove that Non-Profit Corporation "A" is a registered Louisiana corporation with an office located in Metairie, Louisiana, and maintained a business checking and savings account at Whitney Bank.

A representative of the Internal Revenue Service would testify that Non-Profit Corporation "A" is a 501(c)(3) corporation. Witnesses would also testify that Non-Profit "A" provided services to people with developmental disabilities. The services included providing independent living at lower than market rates, personal care attendants, transportation, social opportunities, education, and training, for those with developmental disabilities.

Witnesses would testify that Law Firm "A" is a registered Louisiana corporation with an office located in New Orleans, Louisiana, engages in the practice of law and maintains a business checking account at Whitney Bank. Witnesses would also testify that the president and director of Law Firm "A" maintains a personal account at Whitney Bank.

Witnesses and records would prove that the defendant, **KELLEY WILLIAMS**, (hereinafter referred to as **WILLIAMS**) was employed by Non-Profit Corporation "A" as Chief Financial Officer, as well as a legal assistant for the law firm of the president and director of Non-Profit Corporation "A" from 2004 until January 26, 2011. Testimony would show that some of **WILLIAMS's** duties were to reconcile bank statements for Non-Profit "A" and Law Firm "A," prepare financial statements for Non- Profit "A" that were to be submitted to the Internal Revenue Service, enter financial information into business accounting software, and to log hours worked by personal care attendants.

Witnesses would testify that **WILLIAMS** did not have authority to sign checks in her own name or in that of anyone else, without permission.

Witnesses and records would prove that beginning in or near February 2004, and continuing until on or about January 26, 2011, the defendant, **KELLEY WILLIAMS**, did knowingly possess forged checks of Non-Profit "A" and of the personal account of the president and director of Law Firm "A," drawn on the Whitney Bank accounts of Non-Profit "A" and of the president and director of Law Firm "A," in varying amounts, with the intent to deceive another person and organization. The forgeries were accomplished when the defendant made checks payable to herself or others, without authorization, then forged the name of the president and director of Non-Profit "A" and the director and president of Law Firm "A" as the drawer of the checks. Records would prove that **WILLIAMS** would then deposit the checks into her Capital One or J.P. Morgan Chase bank accounts. As a result, Capital One and J.P. Morgan Chase Bank were deceived as to the legitimacy of the forged checks.

Witnesses and records would then prove that **WILLIAMS** would then log into computer accounting software in order to disguise the actual payee, and replace it with a different name that would give the appearance of an actual expense. Witnesses and records would also show that once **WILLIAMS** received the bank statements the following month, she would cut out her name as payee, replace it with another payee to match the one listed in the computer accounting

software, make a copy, and place what appeared to be the actual cancelled check, into the

monthly bank statement. One of these forged checks is as follows:

| CHECK DATE | CHECK | ACTUAL PAYEE | FAKE PAYEE | DRAWEE BANK | BANK RECEIVING FUNDS | AMOUNT | ACCOUNT HOLDER |
|---|---|---|---|---|---|---|---|
| 12/03/10 | #6101 | KELLEY WILLIAMS | SEIFFERT OFFICE PRODUCTS | WHITNEY BANK | CAPITAL ONE | $724.97 | NON-PROFIT "A" |

A financial analyst and records would be used to prove that beginning in or near

February 2004, and continuing until or on or about January 26, 2011, **WILLIAMS** embezzled

a total of approximately $245,386.60 from Non-Profit "A" and the personal account of the

director and president of Law Firm "A." Specifically, **WILLIAMS** embezzled approximately

$223,388.90 from Non-Profit "A" and $21,997.70 from the president and director of Law Firm

"A."

Records would prove that once **WILLIAMS** was in possession of the embezzled funds,

she then used the money for personal items, including private school tuition.

The above information comes from an investigation conducted by Special Agents of the

Federal Bureau of Investigation, the review of numerous records, and interviews conducted

during the investigation.

KELLEY WILLIAMS  
Defendant

JON MAESTRI  
Assistant United States Attorney

JULIE TIZZARD  
Attorney for Defendant Kelley Williams

New Orleans, Louisiana  
July 25, 2012